UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| **STEPHANIE HARGROVE,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>**JACKSON AUTOMOTIVE INVESTMENTS LLC** a Delaware company,<br><br>*Defendant,* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT**

Plaintiff Stephanie Hargrove ("Plaintiff Hargrove" or "Hargrove") brings this Class Action Complaint and Demand for Jury Trial against Defendant Jackson Automotive Investments LLC d/b/a Toyota of Rockwall ("Defendant" or "Toyota of Rockwall") to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") by making telemarketing calls to consumers without consent including calls to phone numbers that are registered on the National Do Not Call registry ("DNC") and to consumers who have expressly requested that the calls stop. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Hargrove, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all

1

other matters, upon information and belief, including investigation conducted by her attorneys.

## PARTIES

1. Plaintiff Hargrove is a resident of Roxton, Texas.

2. Defendant Toyota of Rockwall is a limited liability company registered in Delaware, with its headquarters located in Rockwall, Texas. Defendant Toyota of Rockwall conducts business throughout this District and throughout Texas.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction and venue is proper since Defendant has its headquarters in this District and the wrongful conduct giving rise to this case was directed from this District.

## INTRODUCTION

5. As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's

representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

7. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

8. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

9. According to online robocall tracking service "YouMail," 4.9 billion robocalls were placed in June 2023 alone, at a rate of 161.9 million per day. www.robocallindex.com (last visited July 9, 2023).

10. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

11. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

3

12. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

13. Toyota of Rockwall operates a Toyota dealership in Rockwall that sells new and used vehicles.[3]

14. Toyota of Rockwall places solicitation calls to consumers to solicit vehicle sales and servicing.

15. Unfortunately, some of these calls from Toyota of Rockwall are being placed to consumers without consent, including to consumers that registered their phone numbers on the DNC, as per Plaintiff's experience.

16. Toyota of Rockwall directs its employees to engage in calling consumers *en masse* to generate business, as is seen in employee job reviews. For example:

---

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.linkedin.com/company/toyotaofrockwall/about/

4

> **Good pay**
>
> Sales Associate (Former Employee) - Rockwall, TX - May 2, 2023
>
> Good pay, managers were good but long meetings in the middle of the day which would throw off sales. Had to make 60 phone calls. Pay plan changed and meetings got longer. [4]

17. To make matters worse, Toyota of Rockwall lacks a sufficient opt-out system to ensure that a consumer who notifies Toyota of Rockwall to stop calling will be removed from Toyota of Rockwall's calling list, as per Plaintiff's experience.

18. Robokiller, a telemarketing report website has recorded thousands of calls that Defendant Toyota of Rockwall placed, including:

> **(469) 267-6825 is a Scam Call**
>
> | | |
> |---|---|
> | Alternately: | +14692676825 |
> | Reported Name: | **Scam** |
> | Reported Category: | **Scam** |
> | Last call: | **August 4, 2022** |
> | Total Calls: | **3,030** |
> | Robokiller User Reports: | 37 |

[5]

---

[4] https://www.indeed.com/cmp/Toyota-of-Rockwall/reviews
[5] https://lookup.robokiller.com/p/469-267-6825

19. In response to these calls, Plaintiff Hargrove brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, as well as an award of statutory damages to the members of the Classes and costs.

## PLAINTIFF HARGROVE'S ALLEGATIONS

20. Plaintiff Hargrove registered her cell phone number on the DNC on February 6, 2023.

21. Plaintiff Hargrove uses her cell phone number for personal use only as one would use a landline telephone number in a home.

22. The calls that Plaintiff Hargrove received from Defendant Toyota of Rockwall were all received more than 31 days after Plaintiff registered her cell phone number on the DNC.

23. On June 19, 2023, Plaintiff Hargrove called Toyota of Rockwall at 469-331-8372 to inquire about the availability of a vehicle she saw online.

24. Plaintiff Hargrove resides 2 hours away from the dealership.

25. Plaintiff Hargrove did not fill out any online forms on the Toyota of Rockwall website.

26. Shortly after the phone call, Plaintiff Hargrove received 2 text messages from Toyota of Rockwall to her cell phone on June 19, 2023 at 10:09 AM from 972-805-7264:

6



27. Later in the day on June 19, 2023, Plaintiff Hargrove received a phone call from the same Toyota of Rockwall employee who sent the text messages, soliciting the sale of a new car, from phone number 972-805-7264. Plaintiff told this employee to stop calling her.

28. Despite her stop request, Plaintiff Hargrove received a call from a 2nd Toyota of Rockwall employee to her cell phone soliciting the sale of a new vehicle on June 19, 2023 from 469-651-1188.

29. Plaintiff answered this call and the employee identified the company she was calling from as Toyota of Rockwall.

30. Plaintiff told the employee to stop calling her.

31. When 469-651-1188 is called, an automated system thanks the caller for calling Toyota of Rockwall.

32. Despite the stop requests, on June 22, 2023, Plaintiff Hargrove received an unsolicited call from a Toyota of Rockwall employee to her cell phone from 469-651-1188. This call was not answered.

33. On June 23, 2023, Plaintiff Hargrove received a 3rd unsolicited call from a Toyota of Rockwall employee to her cell phone from 469-651-1188. Plaintiff Hargrove answered this call. The Toyota of Rockwall employee identified the company name as Toyota of Rockwall.

34. The employee was soliciting the sale of a new vehicle. Once more, Plaintiff told the employee to quit calling her cell phone number.

35. The unauthorized solicitation telephone calls that Plaintiff Hargrove received from or on behalf of Defendant Toyota of Rockwall have harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, occupied her phone line, and disturbed the use and enjoyment of her phone.

36. Seeking redress for these injuries, Plaintiff Hargrove, on behalf of herself and Classes of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

37. Plaintiff Hargrove brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Toyota of Rockwall called more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called Plaintiff.
>
> **Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant Toyota of Rockwall called more than one time on their residential telephone number, (2) within any 12-month period (3) for substantially the same reason Defendant called Plaintiff, (4) including at least once after the Defendant's records reflect the person requested that they stop calling.

38. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Hargrove anticipates the need to amend the Class definition following appropriate discovery.

39. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable, and Plaintiff is a member of the Classes.

40. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

   (a)   Whether Defendant's conduct violated the TCPA;

   (b)   Whether Defendant placed multiple calls within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each call;

   (c)   whether Defendant engaged in telemarketing without implementing adequate internal policies and procedures for maintaining an internal do not call list;

   (d)   whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

41. **Adequate Representation**: Plaintiff Hargrove will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff Hargrove has no interests

antagonistic to those of the Classes, and the Defendant has no defenses unique to Plaintiff. Plaintiff Hargrove and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Hargrove nor her counsel have any interest adverse to the Classes.

42. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Hargrove. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CLAIM FOR RELIEF
**Telephone Consumer Protection Act**

**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Hargrove and the Do Not Registry Class)**

43. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

44. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered her or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

45. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

46. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Hargrove and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

47. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Hargrove and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

48. As a result of Defendant's conduct as alleged herein, Plaintiff Hargrove and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

49. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## SECOND CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Hargrove and the Internal Do Not Call Class)**

50. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

51. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

13

(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is

14

made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

52. Defendant placed calls to Plaintiff and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow Defendant to initiate telemarketing calls/text messages.

53. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

54. Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

15

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing her attorneys as Class Counsel;

b) An award of money damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Hargrove requests a jury trial.

Respectfully Submitted,

**STEPHANIE HARGROVE**, individually and on behalf of all others similarly situated,

DATED this 3rd day of August, 2023.

>By: /s/ *Stefan Coleman*
>Stefan Coleman
>COLEMAN PLLC
>66 West Flagler Street
>Suite 900
>Miami, FL 33130
>(877)333-9427
>law@stefancoleman.com
>
>Avi R. Kaufman*
>kaufman@kaufmanpa.com
>KAUFMAN P.A.
>237 S Dixie Hwy, Floor 4
>Coral Gables, FL 33133
>Telephone: (305) 469-5881
>
>Raymond Hopson, Jr. (local counsel)
>rlhatty@yahoo.com
>Law Offices of Raymond Hopson, P.C.
>PO Box 424
>Royse City, Texas 75189
>Telephone: (214) 354-4561
>
>*Attorney for Plaintiff and the putative Classes*
>
>* *Pro Hac Vice* Admission to Be Sought